IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DONNA S. RUSTON                                                                                    PLAINTIFF

      v.                                                    CIVIL NO. 14-2004

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                                              DEFENDANT

## **MEMORANDUM OPINION**

Plaintiff, Donna Ruston, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability and disability insurance benefits ("DIB") under the provisions of Titles II of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. §405(g).

**I. Procedural Background**

Plaintiff protectively filed her application for DIB on December 23, 2010, alleging an inability to work since October 1, 2009, due to "depression/anxiety/panic disorder, migraines, arthritis, degenerative disc disease, sciatica nerve problems, and lower back." (Tr. 11, 30, 156) For DIB purposes, Plaintiff's date last insured is December 31, 2015. (Tr. 11, 153). Plaintiff's claim was denied initially and on reconsideration. (Tr. 82-84, 88-91). An administrative hearing was held on April 19, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 27-79).

At the time of the hearing, Plaintiff was forty-seven years of age and possessed a high school education. (Tr. 19, 36). Plaintiff had past relevant work ("PRW") experience as a proofing machine operator, secretary, loan officer, and sales clerk. (Tr. 19, 70-71).

By a written decision dated July 6, 2012, the Administrative Law Judge ("ALJ") determined Plaintiff had the following severe impairments: "arthritis, degenerative disc disease, panic disorder, and migraines." (Tr. 13). After reviewing all of the evidence presented, however, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments. (Tr. 13-14). The ALJ found Plaintiff retained the residual functional capacity ("RFC") "to perform medium work as defined in 20 CFR 404.1567©, "except she is able to perform work where interpersonal contact is incidental to work performed; complexity of tasks is learned and performed by rote, few variables, little judgment; and the supervision required is simple, direct, and concrete." (T. 16). With the help of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform her PRW, but could perform the requirements of representative occupations such as grocery stocker and dishwasher. (Tr. 19-20). The ALJ then found that Plaintiff had not been under a disability during the relevant time period. (Tr. 20).

Plaintiff requested a review of the hearing decision by the Appeals Council on July 18, 2012, which denied that request on November 12, 2013. (Tr. 1-7). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeals briefs, and the case is ready for decision. (Doc. 8, 10).

**II. Applicable Law.**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. "Our review extends beyond

2

examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require the application of a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § 404.1520(a)- (f)(2003).

3

Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her RFC. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920 (2003).

### III. Discussion

Plaintiff's only argument on appeal is that the ALJ erred in determining her RFC. Plaintiff believes the ALJ failed to give appropriate weight to her treating physicians, Dr. Robert Lane Wilson and Dr. Tonya Phillips. (Doc. 8 at 4-9).

RFC is the most a person can do despite that person's limitations and is assessed using all relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. *Guilliams v. Barnhart*, 393. F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404. 1545(a)(3). A "claimant's RFC is a medical question, therefore, an ALJ's RFC determination must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003). The ALJ is required to set forth with specifics a claimant's limitations and to determine how those limitations affect a claimant's RFC. *Id*.

Dr. Wilson became Plaintiff's primary care physician in 1994. (Tr. 503). During the relevant time period, Dr. Wilson saw Plaintiff four times and treated her for problems with gas, bloating, sore throat, flu, shoulder pain, tail bone pain, and possible arthritis. (Tr. 577-582). In February 2011, Plaintiff complained of shoulder pain. (Tr. 581). Dr. Wilson assessed a decreased

range of motion and prescribed Tramadol. (Tr. 581). Plaintiff had a follow up on July 12, 2011, and Dr. Wilson noted Plaintiff's shoulder pain and range of motion was better. (Tr. 580). On September 12, 2011, Plaintiff visited Dr. Wilson and complained of bloating and tail bone pain. (Tr. 582). Her x-ray was within normal limits, but Dr. Wilson prescribed Tramadol for her pain. (Tr. 582). On April 17, 2012, Dr. Wilson completed a Medical Source Statement. (Tr. 696-699, 705). Dr. Wilson opined Plaintiff could not sit for more thirty minutes or stand for more than fifteen minutes; required frequent breaks; could not lift more than ten pounds; could never stoop, crouch or squat; had severe manipulative limitations; was incapable of staying on task or performing low stress work; and would miss more than four days per month. (Tr. 696-699).

In March 2007, Plaintiff established care with Dr. Phillips, who treated Plaintiff's migraine headaches, snoring, and sleeping problems. (Tr. 541). Dr. Phillips noted at the visit that Plaintiff "gets headaches when she drinks," but otherwise her headaches were controlled. (Tr. 541-542). Dr. Phillips switched Plaintiff's supportive headache medication from Depakote to Topamax because of Depakote's side effects, especially weight gain, and added Migranal as an abortive medication. (Tr. 543). Plaintiff's migraines responded well to Topamax and Migranal, although Dr. Phillips noted alcohol use and over-the-counter medicines continued to be headache triggers. (Tr. 544-545, 549-550).

In October 2007, Plaintiff was prescribed a DHE injectable as an abortive medication, and Dr. Phillips noted her migraine headaches were only occurring about once a month. (Tr. 547-548). In August 2009, Dr. Phillips reported Plaintiff's DHE treatment was an effective abortive treatment, although Plaintiff was not using it often because her migraines were stable, and that

5

she tolerated Topamax without any side effects. (Tr. 551). At a follow up visit in June 2010, Dr. Phillips described Plaintiff's condition as:

> Sometimes the Migranal works, but the DHE injectable is working quite well for her. ... Most of the headaches seem to be still triggered by intermittent alcohol intake. She had one Sunday. She and her husband had some drinks and the next morning woke up with a bad headache. She pretty much had to stay in bed all day. She is not sure what her other triggers are, but for the most part they are not on a frequent basis. She has occasional regular headaches, but those are not terribly frequent. She is not having to take anything for those. (Tr. 332).

Dr. Phillips counseled Plaintiff to reduce her alcohol intake and continue taking Topamax. (Tr. 332). Dr. Phillips also recommended a sleep study, which revealed mild obstructive sleep apnea. (Tr. 451). Plaintiff underwent an operation to repair a deviated septum and improve her sleep in July 2010. (Tr. 350). In January 2011, Plaintiff returned with complaints of occasional migraines, and Dr. Phillips advised she maintain her current prescription medications, but eliminate her use of over-the-counter pain killers to prevent analgesic rebound headaches. (Tr. 448, 449).

On June 14, 2011, Dr. Phillips completed a one-page Migraine Headache Form. (Tr. 446-447). Dr. Phillips opined that Plaintiff had a fair response to her medications, that migraines affected Plaintiff's ability to work, and that she would miss about one day per week. (Tr. 446). As Dr. Phillips indicated in her treatment note the same day, her responses to the Migraine Headache Form were based on Plaintiff's self report that headaches caused her to miss one day a week from work at her old job, before Dr. Phillips's care. (Tr. 447).

No new problems arose until March 8, 2012, when Dr. Phillips noted Plaintiff's headaches were worse, and that Plaintiff no longer wanted to take Topamax. (Tr. 674). Dr.

AO72A
(Rev. 8/82)

Phillips suggested Botox treatment as a supportive medication, if Plaintiff was unhappy with Topamax, and continuing the DHE treatment as an abortive. (Tr. 541).

The ALJ addressed Dr. Wilson and Dr. Phillip's opinions. (Tr. 16-19). Dr. Wilson's Medical Source Statement was given little weight because the extreme limitations he expressed were inconsistent with his treatment records, which showed only minimal to moderate limitations. (Tr. 18). Dr. Phillips's opinion was similarly discounted because her treatment notes indicated Plaintiff's headaches were triggered by controllable factors, and Dr. Phillips documented Plaintiff's headaches stable when Plaintiff was compliant with her treatment plan. (Tr. 18). The ALJ also discounted Plaintiff's subjective complaints of pain after applying the *Polaski* framework because her claims were inconsistent with her daily activities, and the record as a whole indicated she received conservative treatment and her treatment controlled her conditions.[1] (Tr. 17-18).

Plaintiff argues Dr. Wilson and Dr. Phillip's opinions should be granted controlling weight since they were her treating physicians. (Doc. 8 at 5). An ALJ can appropriately disregard the opinion of a treating physician, however, when other medical assessments are supported by better or more thorough medical evidence or when a treating physician renders inconsistent opinions that undermine the credibility of such opinion. *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000). Here, Dr. Wilson's opinion was inconsistent with his treatment notes, which indicated Plaintiff had only mild joint pain, and the limitations he suggested were more restrictive than Plaintiff's self-reported limitations. For instance, Dr. Wilson opined Plaintiff had severe manipulative and reaching limitations, but he did not treat Plaintiff for handling or

---

[1]The ALJ's determination that Plaintiff was not credible is not challenged on appeal.

fingering conditions, and Plaintiff reported in her Function Report that she did not have any difficulties reaching. (Tr. 179, 698). As for Dr. Phillips's opinion, her answers to a short checklist were reasonably discounted because Dr. Phillip's other reports indicated Plaintiff's headaches were controlled and her statements were not based on her treatment records. Instead, Dr. Phillip's opinion expressed Plaintiff's self-assessment that "she was missing work about once a week" when she was last employed. (Tr. 447). *See Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

Having appropriately discounted two of Plaintiff's treating physicians, the question is whether the ALJ's opinion, which gave great weight to the State's consulting physicians, still rested on substantial evidence. Courts will uphold the ALJ's decision based on the opinions of consulting physicians (1) where one-time medical assessments are supported by better or more thorough medical evidence or (2) where a treating physician renders inconsistent opinions that undermine the credibility of their opinions. *See e.g., Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000).

After discounting Dr. Phillip's and Dr. Wilson's opinions, the ALJ was able to rely on Plaintiff's treatment records and the State's consulting physicians. Dr. Robert Spry, a State psychiatrist, examined Plaintiff on May 26, 2011, and opined Plaintiff had only mild difficulties with coping, concentration, and persistence. (Tr. 422). Dr. Winston Brown, the State's non-examining psychiatrist, completed a mental RFC assessment and opined Plaintiff was capable of unskilled work, an opinion affirmed by Dr. Sheri Simon on August 30, 2011. (Tr. 438, 444-445, 469). Finally, Dr. Julius Petty, the State's non-examining physician, completed a physical

RFC assessment and opined Plaintiff could perform medium work, an opinion affirmed by Dr. Ronald Crow on August 31, 2011. (Tr. 464, 474).

A review of the record indicates the ALJ appropriately credited the State's consulting physicians over the opinions of Plaintiff's treating physicians. Plaintiff first sought treatment for her chronic anxiety in 1996 when she was prescribed Xanax and Prozac, but she was able to keep working until 2007. Plaintiff's ability to maintain employment with her anxiety condition, coupled with the absence of evidence her conditions significantly deteriorated, tends to prove her impairments were not disabling. *See Orrick v. Sullivan*, 966 F.2d 368, 370 (8th Cir. 1992). While anxiety appeared to be a factor in her decision to quit her job, she reported to her treating psychiatrist, Dr. Max Baker, that she left her job so she could manage her liquor store. (Tr. 320, 321). Plaintiff elaborated to Dr. Steve Shry in 2007, " back when I first started getting the panic attacks, I had to stay because of my kids, but now my husband is financially secure, and it's not necessary for me to work anymore so I quit." (Tr. 299). At her hearing, she similarly testified she had worked with her anxiety condition for more than two years, but eventually quit her job, in part, to have more flexibility and a higher income from her new business. (Tr. 39-40). Plaintiff's decision to leave work for reasons not related to her medical condition indicated she was not disabled. *See Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004).

Plaintiff also consistently reported to her physicians that medications controlled her anxiety and headaches, so long as she avoided triggers. (Tr. 302, 314, 331, 332, 449, 541, 544-545, 547-550). As for her alleged arthritis and shoulder problems, she never sought treatment with a rheumatologist, surgery or specialized treatment was never recommended by a physician, she reported her pain was better after she received painkillers, and she reported physical therapy

9

exercises helped her shoulder. (Tr. 55, 58, 577-582). Plaintiff's conservative treatment was evidence her conditions were not disabling. *See, e.g., Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007).

Finally, Plaintiff's daily activities were consistent with an ability to work. Plaintiff and her husband's January 2011 Function Reports show that she was capable of personal care and document that in her average day she went outside, drove, and went her liquor store to inspect her business. (Tr. 175-177, 188). As already noted, it was significant that Plaintiff quit her job to purchase and manage a family owned business for reasons other than her medical condition. More convincing, is the evidence Plaintiff continued to operate her business during her period of alleged disability. Plaintiff claimed in her testimony that she was bedridden from pain, but reported to Dr. Baker on March 29, 2010, that she had taken eight weeks off from work to have a tummy tuck. (Tr. 50-56, 331). According to Dr. Baker's treatment notes, she had just started "an exercise regimen ... she says she is ready to go back to work and is getting the store back my way ... she is not having any panic attacks and her mood is good ... she still has migraines every couple of weeks." (Tr. 331). Similarly, Plaintiff reported in June 29, 2010, while exploring a rhinoplasty and septoplasty procedure that she managed her liquor store. (Tr. 339, 343). Plaintiff's daily activities and ability to manage her liquor store tends to prove she wass not disabled. *See Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994).

Accordingly, the Court finds the ALJ's RFC determination was based on substantial evidence.

**D. Conclusion:**.

Having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 26th day of January 2015

/s/ *Mark Ford*
HON. MARK FORD
UNITED STATES MAGISTRATE JUDGE